**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Leslie Lindsey, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | 19 CV 1753 |
| vs. | ) | |
| | ) | |
| Chicago Housing Authority, | ) | |
| McCormack Baron Management, Inc. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants | ) | |

**COMPLAINT**

Plaintiff Leslie Lindsey, by and through her attorneys Mary Rosenberg and Access Living of Metropolitan Chicago, for her Complaint against Chicago Housing Authority and McCormack Baron Management, Inc., states as follows:

**INTRODUCTION**

1.     Plaintiff Leslie Lindsey ("Ms. Lindsey") lives in a two-bedroom unit in a public housing building subsidized by the Chicago Housing Authority ("CHA"). The building is in a high crime area.

2.     Ms. Lindsey has a psychiatric disability. On August 13, 2016, Ms. Lindsey requested the CHA transfer her to a low-crime neighborhood as a reasonable accommodation. Living in a lower-crime neighborhood will help alleviate symptoms of Ms. Lindsey's disability and greatly improve her quality of life by decreasing her anxiety and fear.

3.     Eventually, in February 2018, Ms. Lindsey was shown a unit two blocks from her current unit.  She declined this unit because it was two blocks away from her current unit and thus did not address her need for a low-crime area.

1

4.     Due to her disability, Ms. Lindsey has a live-in aide, Tommy Wilboum, who assists her with tasks of daily living such as cooking, cleaning, laundry, and paying bills.  On April 1, 2018, Ms. Lindsey requested the CHA add Mr. Wilboum to her unit as a live-in aide. On September 14, 2018, CHA said it would approve Ms. Lindsey's request for a live-in aide, provided that Ms. Lindsey and Mr. Wilboum move from her current two-bedroom unit to a one-bedroom unit. CHA claimed it was under no obligation to provide separate bedrooms for Ms. Lindsey and her live-in aide.

5.     The CHA's own policies state that the head of household cannot be forced to share a bedroom with a live-in aide.  Ms. Lindsey and Mr. Wilboum are not romantically involved.

6.     Ms. Lindsey files this Complaint regarding CHA's discriminatory (1) failure to move her to a low-crime neighborhood, and (2) insistence she share a bedroom with her live-in aide, which both constitute violations of Section 504 of the Rehabilitation Act of 1973 ("Section 504") and the federal Fair Housing Act ("FHA" or "the Act").

<u>PARTIES</u>

7.     Plaintiff Leslie Lindsey ("Ms. Lindsey") lives at 2313 W. Warren Avenue, Unit B, Chicago, Illinois 60612.

8.     Defendant Chicago Housing Authority ("CHA") is the owner of Ms. Lindsey's building.

9.     Defendant McCormack Baron Management, Inc. ("McCormack") manages the building. McCormack is an Illinois corporation.

<u>JURISDICTION AND VENUE</u>

2

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a). Plaintiff's claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 3613(c)(1).

11.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because Defendants reside there and because a substantial part of the events or omissions giving rise to Plaintiff's claims arose there.

## FACTS

12.     Plaintiff Ms. Lindsey has lived in a two-bedroom unit at 2313 W. Warren Avenue ("subject property") since 2010. She has a psychiatric disability that, among other things, causes her to experience anxiety and fear.

13.     Ms. Lindsey's unit is federally-subsidized public housing owned by CHA.

### Request for a Transfer to a Low-Crime Area

14.     Ms. Lindsey's unit is located in a high-crime area. There is gang activity in the neighborhood and, at all times of the day, people loiter outside her building and sell drugs in nearby vacant buildings. Due to her disability, Ms. Lindsey experiences constant fear due to the frequent gang and drug activity.

15.     Ms. Lindsey's physician reports that "[a] lower-crime area would help to alleviate some symptoms of Ms. Lindsey's disability" and "would improve her quality of life greatly by decreasing her anxiety and constant fear." *See* Letter from Kari Boersen, PA-C (October 13, 2018) *attached as* Exhibit A.

16.     On August 13, 2016, to address her fear and anxiety, Ms. Lindsey requested the CHA transfer her to a low-crime neighborhood.  Specifically, she requested a transfer to a CHA

3

unit at 2902 W. Warren Boulevard in Chicago. Ms. Lindsey likes this unit because it is in a low-crime, residential neighborhood occupied by mostly working families.

17.     In February 2018, Ms. Lindsey was shown a unit at 2307 W. Monroe Avenue in Chicago, which is approximately two blocks from her current unit.

18.     Because this unit is so close to her current unit, it presents the same problems with criminal activity that Ms. Lindsey needs to avoid. Accordingly, she declined this unit.

19.     From February 2018 to the present, Ms. Lindsey has continued to follow up on her request for a reasonable accommodation. However, the CHA has failed to offer her any other units.

<u>Request for a Live-In Aide</u>

20.     Because of her psychiatric disability, Ms. Lindsey requires a live-in aide "to assist her with the tasks of day-to-day living, such as cooking, cleaning, laundry, and paying bills. Her aide also helps her navigate social situations." Ex. A.

21.     Ms. Lindsey lives in her current two-bedroom unit with her live-in aide, Tommy Wilboum ("Mr. Wilboum").[1] Mr. Wilboum has been Ms. Lindsey's live-in aide for about three years. He assists Ms. Lindsey with the above-described tasks. Before Mr. Wilbourne became the live-in aide, one of Ms. Lindsey's family members served as her live-in aide.

22.     Ms. Lindsey does not have a romantic relationship with Mr. Wilboum.

23.     Ms. Lindsey and Mr. Wilboum are not related.

24.     Ms. Lindsey worried that if her reasonable accommodation request to transfer to a low-crime area were approved, the CHA would downsize her from her current two-bedroom unit to a one-bedroom unit, which would force her to share a bedroom with Mr. Wilboum. Thus, on

---

[1] Ms. Lindsey initially shared the two-bedroom unit with her child, who is now deceased.

April 1, 2018, Ms. Lindsey asked the CHA to add Mr. Wilbourn to the lease as her live-in aide as a reasonable accommodation, based on her understanding that if approved, she and Mr. Wilbourn would be entitled to separate bedrooms.

25. On May 30, 2018, Ms. Lindsey received a notice from McCormack that her unit would be "right-sized" – that is, that she would be moved from a two-bedroom unit to a one-bedroom unit.

26. On July 17, 2018, Ms. Lindsey submitted another request to CHA that it add Mr. Wilbourn to the lease as her live-in aide.

27. On September 13, 2018, Ms. Lindsey's attorney, Mary Rosenberg of Access Living of Metropolitan Chicago, re-sent documentation to CHA regarding Ms. Lindsey's need for a live-in aide.

28. On September 14, 2018, CHA responded that it would approve Ms. Lindsey's request for a live-in aide on the condition that Ms. Lindsey and Mr. Wilbourn move to a one-bedroom unit. The letter stated "CHA policy does not guarantee that a live-in aide receive their own bedroom." *See* Letter from Brian Barnes (September 14, 2018) *attached as* Exhibit B.

29. On September 28, 2018, counsel for Ms. Lindsey responded to this letter with a reasonable accommodation request that asked that Ms. Lindsey: (1) be approved for a a two-bedroom apartment to allow her live-in aide to live with her; (2) be transferred to a low-crime neighborhood to accommodate her needs; or, if that is not possible, (3) be issued a tenant-based Housing Choice Voucher (HCV) for a two-bedroom unit so she can find a place that accommodates her. *See* Letter from Mary Rosenberg to Brian Barnes (September 28, 2018) *attached as* Exhibit C.

30.     On October 4, 2018, CHA denied Ms. Lindsey's request for reasonable accommodation. It claimed the CHA: (1) cannot ensure placement in a low-crime area, as "that is beyond the control of CHA and there is no possible way CHA can guarantee that one area of the city has a lower crime rate than another"; and (2) is unable to provide Ms. Lindsey with a two-bedroom unit because they are "not required to provide tenants with a guaranteed second bedroom simply because a live-in aide is approved. Bedroom size is determined by the number of family members in the unit; live-in aides are considered household members, not family members." *See* Letter from Brian Barnes (October 4, 2018) *attached as* Exhibit D.

31.     In the same letter, CHA also denied Ms. Lindsey's request for a housing choice voucher. Ex. D.

32.     The letter further stated "CHA has met its obligation for finding units that match [Ms. Lindsey's] needs as outlined in your original Reasonable Accommodation request and [Ms. Lindsey's] refusal of these units does not mean that CHA has the obligation to offer [Ms. Lindsey] an HCV voucher as CHA has shown that its existing housing would meet the need." Ex. D.

33.     Notwithstanding CHA's contention that Ms. Lindsey was offered more than one unit, Ms. Lindsey was only shown the unit at 2307 W. Monroe.

## COUNT I: FAILURE TO TRANSFER AS A REASONABLE ACCOMMODATION UNDER SECTION 504

34.     Ms. Lindsey re-incorporates and re-alleges paragraphs 1-33 of this Complaint as fully set forth herein.

35.     Section 504 of the Rehabilitation Act states that "[n]o . . . qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be subjected to discrimination under any program or

activity receiving Federal financial assistance . . ."  29 U.S.C. § 794(a).  Ms. Lindsey is a qualified individual with a disability under Section 504.

36.     Ms. Lindsey's building is federally-subsidized housing and therefore the CHA must comply with Section 504. 29 U.S.C. § 794(b)(3)(A)(ii)(Section 504 applies to corporations, partnerships, or private organizations that are "principally engaged in the business of providing . . . housing . . .").

37.     Section 504 requires recipients of federal funds to provide reasonable accommodations to people with disabilities. 24 C.F.R. § 8.11. A reasonable accommodation is "a change, modification, alteration, or adaptation in policy, procedure, practice, program, or facility that provides a qualified individual with a disability the opportunity to participate in, or benefit from, a program or activity." *See* HUD, People with Disabilities – Section 504: Frequently Asked Questions, *available at:* http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/disabilities/sect504faq.

38.     The 2015 CHA Admissions and Continued Occupancy Policy (ACOP) lays out CHA's policies for public housing.  The ACOP provides a non-exhaustive list of reasonable accommodation transfers, including:

    i. Transfers to a unit in closer proximity to healthcare providers;

    ii. Transfers to a unit which provide an extra bedroom for a live-in aide, large medical equipment, a separate room for a family member needing extra space for a verified medical need (e.g. a child who may have loud, disruptive/violent outbursts), etc.;

    iii. Transfers to a unit located on the first floor of a development;

    iv. Transfers to a unit without mobility barriers, such as stairs, carpeting, etc.; and

    v. Transfers to units with sensory equipment.

CHA 2015 ACOP [hereinafter "ACOP"] at § V-B(3)(d) *available at*:

https://www.thecha.org/sites/default/files/2018-

08/fy2015_admissions_and_continued_occupancy_policy_-_boc_approved_8.19.14_2.pdf. A

transfer to a low-crime area as a result of a psychiatric disability is consistent with these transfer

examples.

39.      Moreover, "[r]esidents who request a transfer will receive only one unit offer;

however, multiple unit offers may be made to satisfy a reasonable accommodation request."

ACOP at § V-(A)(2).

40.      In addition, "PHAs [public housing authorities] must bear the reasonable costs of .

. .  all transfers needed as a reasonable accommodation for residents with disabilities. . . The

reasonable cost of transfers includes not just the cost of packing, moving, and unloading, but also

the cost of disconnecting and reconnecting any existing resident-paid services such as telephone

and cable television." U.S. Department of Housing and Urban Development Public Housing

Occupancy Guidebook at 150, (June 2003), *available at:*

https://www.hud.gov/sites/documents/DOC_10760.PDF; *See also* ACOP at § V-E(1) ('The CHA

will pay the costs associated with moving and transfer of utilities for all transfer types, except

resident-initiated transfers.")

41.      Living in a high-crime area exacerbates Ms. Lindsey's disability. She experiences

constant fear and often feels her situation is life-threatening. Living in a lower-crime area will

help alleviate symptoms of Ms. Lindsey's disability.

42.      Although CHA showed Ms. Lindsey a unit at 2307 W. Monroe, this unit did not

accommodate her needs. CHA did not show any other units to Ms. Lindsey. Thus, CHA failed to

accommodate Ms. Lindsey, in violation of Section 504.

43.     Defendants' failure to accommodate Ms. Lindsey caused her damage. Because of Defendants' failure to grant her reasonable accommodation request, Ms. Lindsey continues to live in a high-crime neighborhood, which exacerbates her disability.

<u>COUNT II: FAILURE TO APPROVE  LIVE-IN AIDE AS A REASONABLE ACCOMMODATION UNDER SECTION 504</u>

44.     Ms. Lindsey re-alleges and incorporates paragraphs 1-43 as if fully set forth herein.

45.     The ACOP states that "a live-in aide <u>shall</u> not <u>be</u> required to share a bedroom with the head of household." (emphasis in original) *See* ACOP at § II-J 1(f). In addition, "[t]he CHA will supply a bedroom for the live-in aide, if necessary. However, the CHA will not supply a larger unit in order to accommodate the live-in aide's family members." ACOP at § IV(E)(9). Additionally, "a head of household (leaseholder) shall not be required to share a bedroom unless the head of household is married, in a consensual relationship, or otherwise agrees to share a bedroom." *Id.* at §  II(J)(1)(a); *see also* HUD Handbook § 3-23(E)(6)(d)("the owner must count live-in aides for purposes of determining appropriate unit size.").

46.     Ms. Lindsey is not romantically involved with her live-in aide, nor is there any reasonable reason to require her to share a bedroom with him. Therefore, the CHA must provide a bedroom for Ms. Lindsey's live-in aide.

47.     CHA representative Brian Barnes stated CHA would only approve a live-in aide for Ms. Lindsey if she agreed to share her bedroom with the live-in aide. Placing a wrongful condition on approval of a reasonable accommodation request is the same as denying the reasonable accommodation request. *See Joint Statement of the Department of Housing and Urban Development and Department of Justice – Reasonable Modifications Under the Fair Housing Act*, Washington, D.C. (March 5, 2008), p. 12 (Question 21) *available at :*

https://www.hud.gov/sites/documents/reasonable_modifications_mar08.pdf ("Imposing

conditions not contemplated by the Fair Housing Act and its implementing regulations may be

the same as an illegal refusal to permit the modification").

48.     To require Ms. Lindsey and Mr. Wilbourn to share a bedroom as a condition of

granting her request for a live-in aide is tantamount to rejecting her reasonable accommodation

request. Thus, CHA failed to accommodate Ms. Lindsey, in violation of Section 504.

49.     CHA's policy, to the extent it requires people with disabilities to share a bedroom

with live-in aides, violates the CHA's own guidelines and Section 504.

50.     Defendants' failure to accommodate Ms. Lindsey caused her damage. As a result

of Defendants' failure to grant her reasonable accommodation request, Ms. Lindsey lives in fear

of having to move to a one-bedroom unit, and either be without her live-in aide, or have to share

a bedroom with him. Either situation would affect her mental health, and cause her damage.

<u>COUNT III: FAILURE TO APPROVE A LIVE-IN AIDE AS A REASONABLE
ACCOMMODATION  UNDER THE
FAIR HOUSING ACT</u>

51.     Plaintiff Leslie Lindsey incorporates and re-alleges paragraphs 1-50 as if fully set

forth herein.

52.     The federal Fair Housing Act prohibits discrimination against people with

disabilities in housing.

53.     "Disability" is defined as "a physical or mental impairment which substantially

limits one or more of such person's major life activities." 42 U.S.C. § 3402(h).

54.     Ms. Lindsey has a psychiatric disability that, among other things, causes her to

experience constant anxiety and fear. Thus, she is a person with a disability under the Act.

55.     Under the Act, it is unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

56.     Defendants failed to grant Ms. Lindsey's reasonable accommodation request for a live-in aide when they told her she could only have a live-in aide if she agreed to share a bedroom with him. This condition violates the Act.

57.     Defendants' failed to grant Ms. Lindsey's accommodation request caused her damage. Because of Defendants' failure to grant her reasonable accommodation request, Ms. Lindsey continues to live in a high-crime neighborhood, which exacerbates her disability.

58.     Defendants acted intentionally, willfully and/or in reckless disregard for the rights of Ms. Lindsey.

## COUNT IV: FAILURE TO TRANSFER AS A REASONABLE ACCOMMODATION UNDER THE FAIR HOUSING ACT

59.     Plaintiff Leslie Lindsey incorporates and re-alleges paragraphs 1-58 as if fully set forth herein.

60.     Defendants violated the federal Fair Housing Act when they failed to grant her reasonable accommodation request to be transferred to a unit in a low-crime area.

61.     Defendants' failure to accommodate Ms. Lindsey caused her damage. As a result of Defendants' failure to grant her reasonable accommodation request, Ms. Lindsey lives in fear of having to move to a one-bedroom unit, and either be without her live-in aide, or have to share a bedroom with him. Either situation would affect her mental health, and cause her damage.

62.     Defendants acted intentionally, willfully and/or in reckless disregard for the rights of Ms. Lindsey.

RELIEF REQUESTED

WHEREFORE, Plaintiff Leslie Lindsey respectfully requests that this Court:

    A.  Declare that Defendants' acts constitute discrimination under Section 504 and the federal Fair Housing Act;

    B.  Require Defendants to provide a separate bedroom for Ms. Lindsey's live-in aide;

    C.  Require Defendants to transfer Ms. Lindsey to a unit in a low-crime neighborhood as a reasonable accommodation for her disability;

    D.  If such a unit is unavailable, order Defendant CHA to provide Ms. Lindsey with a Housing Choice Voucher so that she can find a place that accommodates her;

    E.  Require Defendant CHA to change its live-in aide policies so that a head of household is not forced to share a bedroom with a live-in aide;

    F.  Require Defendant CHA to change its policies to allow transfer to a low-crime neighborhood as a reasonable accommodation;

    G.  Award Plaintiff attorneys fees;

    H.  Award Plaintiff damages; and

    I.  Any other such relief as this Court deems equitable and just.

DEMAND FOR JURY TRIAL

      Plaintiff requests a trial by jury.

Dated: March 13, 2019                        Respectfully Submitted,

                                        /s/ Mary Rosenberg
                                    One of the Attorneys for Plaintiff

Mary Rosenberg

Kenneth M. Walden
Charles Petrof
Access Living of Metropolitan Chicago
115 W. Chicago
Chicago, Illinois 60654
mrosenberg@accessliving.org
Phone: (312)640-2155
Fax: (312) 640-2101